UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 22-CV-00102-WWB-GJK

FALISHA BELL,

    Plaintiff,

v.

ARC ONE PROTECTIVE SERVICES, LLC

    Defendants.

_____/

## DEFENDANT'S RENEWED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Arc One Protective Services LLC ("Defendant"), requests that this Court make a fairness finding approving the terms of the Parties' settlement of the Fair Labor Standards Act ("FLSA") claim asserted in the above-captioned matter and dismissing this case with prejudice. The FLSA Settlement Agreement between the Parties (the "Settlement Agreement") is attached as **Exhibit "A**."

### I.    Relief Requested

Defendant respectfully request that this Honorable Court enter an Order approving the terms of the Parties' FLSA settlement, with proposed modification outlined in this motion, and dismissing this action with prejudice. The parties' settlement agreement also resolves the non-FLSA claim Plaintiff made against the Defendant.

### II.    Changes to Joint Motion and Settlement Agreement In Response to General Magistrate Report (DE68)

1

On November 9, 2022, the parties filed their joint motion for approval of FLSA settlement agreement (DE66). On December 8, 2022, Plaintiff filed her own motion requesting the Court to approve the settlement agreement (DE67).

On December 23, 2022, the General Magistrate entered a report and recommendations requesting the parties elaborate on the relationship between the amount paid and the and the lost wages and liquidated damages, the consideration for the mutual general release, non-disparagement clause, and confidentiality clause (DE 68). The Court also ordered the parties to eliminate the clause that allows modification without Court Approval.

While it appeared to Defendant that the parties were in agreement in their desire to modify the agreement as the Court suggested and seek entry of an order enforcing the parties' agreement, as of very recently, it appears Plaintiff is no longer in agreement.

From discussions with Plaintiff on 1/17/23 and 1/18/23, it appears that she believes that she is entitled to the settlement under the terms of the agreement, but is also believes that the Court is inviting her to advocate for a higher amount, with the $8,000.00 as the floor for what she believes she can receive. Defendant objects to modifying the settlement amount.

Defendant notes that in addition to signing the settlement agreement, agreeing to the joint filing of the motion to approve the joint settlement agreement, Plaintiff filed her own motion on December 8, 2022, urging the Court to approve the settlement (DE 67).

Defendant had initially anticipated filing this as a joint motion but now Defendant has no choice but to file this motion by itself. Defendant agrees to allow the Court to modify the agreement by removing general release, non-disparagement clause, and confidentiality clause as well as the clause that allows modification without court approval – these were all the problematic provisions identified in the

Magistrate's order (DE68). Defendant has further included in this Motion additional background as to each side's claims as to Plaintiffs' hours worked. Defendant objects to changing the settlement amount, which is what it seems Plaintiff would like to do now.

### III.     Basis for Request

This case involved a claim for unpaid overtime wages. Plaintiff, Falisha Bell, worked for Defendant as a security guard. Plaintiff alleged that Defendant failed to properly compensate Plaintiff for the time she worked, thus violating the Fair Labor Standards Act ("FLSA"), because Defendant had improperly classified Plaintiff as an overtime exempt under the FLSA. Defendant denied same, arguing that Plaintiff was properly classified as overtime exempt under the FLSA and was thus properly paid for all time worked. Indeed, there was a genuine dispute as to whether the Plaintiff was properly classified as overtime exempt. As such, this case involves contested issues of both liability and amount of damages, if any.

As the Court may recall, while Plaintiff is pro se now, she was initially represented by the law firm of Jordan Richards PLLC. Plaintiff's former counsel filed the operative complaint and the pleadings that came before it. While she was not represented at mediation, she presumably received counsel from her attorney regarding her claims while he represented her, and thus has some knowledge as to the merit of her claims – unlike the employees described in *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982), who were not represented by counsel and were not involved litigation with their employer.

Furthermore, while Plaintiff is unrepresented, she is not entirely unsophisticated with the legal system by any means.[1] She has filed a number of lawsuits in federal and state court against

---

[1] In contrast, the Court in Lynn noted that many of the employees didn't even speak English.

3

former employers for employment related causes of action such as discrimination and retaliation, such as a 2016 matter, 1:16cv23351 in the Southern District of Florida, and a 2023 matter styled Falisha Bell vs. Delta Five Security, LLC, in Miami-Dade County, case # 2020-020756-CA-01.

Not only that, but on September 23, 2021, Plaintiff personally petitioned the United States Supreme Court for relief related to a lawsuit she had against her former attorney[2]. See attached Exhibit "B." While her petition was unsuccessful, it is still impressive and demonstrates that she is very much not your typical unsophisticated litigant – attorney or no attorney.

As noted in Plaintiff's complaint. She was paid $18.50 an hour as her regular wage.

On January 21, 2021, Plaintiff's counsel at the time, Jake Blumstein, informed Defendants that Plaintiff's overtime hours amounted to a grand total of $550, and her liquidated damages amounted to $550. According to Blumstein, he was authorized by Plaintiff to make a demand for this amount as to Plaintiff's overtime and liquidated damages claims.

From Defendant's own calculations, if Plaintiff was entitled to lost wages her overtime hours would have amounted to 82.65 and her overtime amount to $764.51. Her liquidated damages would have been $764.51. As such, Defendant and Plaintiff were initially not far off from their calculations.

On March 2, 2022, Plaintiff's attorney filed a motion to withdraw, citing unspecified irreconcilable differences with his client. See DE16.

In response to her former attorney's motion to withdraw, Plaintiff filed numerous responses objecting to her counsel's withdrawal and seeking to keep him on the case. See DE19 and 21. Plaintiff further claimed in filings that she had reached out to a number of law firms, but no

---

[2] This was a different attorney/firm than who represented her in this case.

attorney would take her case. Nevertheless, the Court granted Plaintiff's counsel's motion to withdraw.

Since then, Plaintiff has not retained counsel and has struggled to comply with the federal rules or local rules. On June 29, 2022, this Court specifically entered a show cause order threatening to dismiss Plaintiff's claim for her failure to comply with the Court's order, federal rules, and local rules. See DE45. In Plaintiff's sworn interrogatories, dated June 15, 2022, she claimed that she worked from October 12, 2021 through February 5, 2022, every single day. This would amount to 116 days of continuous workday days. See Plaintiff's sworn interrogatories attached as Exhibit "C."

Plaintiff further claims that her "regular hours" were 12 hours a week, 7 days a week. This would mean that Plaintiff worked 28 overtime hours a week, or 4 hours of overtime each day for 116 days for a total of 464 overtime hours. At an $18.50 pay rate, half time pay would be an additional $9.25 an hour. So if Plaintiff's assertions are accepted at face value, Plaintiff's unpaid overtime would have been $4,292.00. Her liquidated damages at $4,292.00.

However, in the same interrogatory responses where Plaintiff claims she worked 12 hours per day as her regular hours, she also claims her overtime hours as 48 hours overtime per week. If her regular work hours were 12 hours per day, that would already amount to 28 hours of overtime. So it is unclear how Plaintiff obtained the number of 48 hours per week.

If Plaintiff is claiming that 48 hours of overtime per week was in addition to the 12 hours per day she was claiming to have worked, then that would mean she is claiming to have worked approximately 19 hours a day. That would be 19 hours a day for 116 continuous days, leaving Plaintiff only 5 hours of the day where Plaintiff was not working.

5

On January 18, 2023, in an email to Defendants' counsel, Plaintiff has since clarified that she worked 12 hours a day 7 days a week. Which as explained previously, if accepted at face value, would amount to $4,292.00. Her liquidated damages would be $4,292.00. See Exhibit "D."

Suffice it to say, Defendant disputes these numbers. Defendant contends that Plaintiff worked nowhere near the days or numbers that she contends she worked, and her schedule reflects that she only worked 82.65 hour that could be considered overtime, amounting to at most $764.5 in unpaid overtime $764.5 in liquidated damages. See attached the schedule as Exhibit "E."

The inconsistent and unrealistic numbers put forth by Plaintiff, and Defendants' and Plaintiff's former counsel's own calculations that are close to each other but substantially lower than Plaintiff's, cast significant doubt as to Plaintiffs' claims and credibility.

There was a genuine dispute between the parties regarding Plaintiffs' entitlement and amount. The parties had already exchanged the initial discovery ordered by this Court. Defendant would have incurred attorney fees and costs if the litigation continued, as well as an uncertain result. Plaintiff did not have an attorney, she would have also incurred costs had the litigation continued, in addition to an uncertain result, and the risk of the Court dismissing her case or sanctioning her based on her repeated failures to comply with the rules. As she has stated her filings numerous times, she had attempted to have multiple law firms represent her after her attorney withdrew, however no firm was willing to take her case.

With that in mind, the Parties had several in-depth discussion on liability and damages and attended a mediation conference before mediator Steven Blount – whom Plaintiff specifically selected and Defendant then agreed to. Defendant denied liability but agreed to pay $8,000 to resolve the instant FLSA claim as well as Plaintiff's retaliation claim. The parties further agreed that each side would bear their own attorney fees and costs. Given that Plaintiff's counsel had

withdrawn, and Plaintiff is a pro se non-attorney, there is no entitlement to attorney fees. The main cost borne by the parties was the cost of mediator, which both sides voluntarily and mutually agreed to beforehand. Plaintiff specifically selected the mediator, who charged each party $1,000.00. As part of their agreement to resolve this dispute, and the uncertainty that comes with it, each side agreed to bear their own cost.

The Parties voluntarily agreed to the terms of this settlement during negotiations.

### IV. Memorandum of Law

There are two ways in which claims under the Fair Labor Standards Act of 1938 ("FLSA") can be settled and released by employees. First, section 216(c) of the FLSA allows an employee to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. § 216(c); *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353, (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters an Order approving the settlement. *Id*.; *see also D.A. Schulte, Inc. v. Gandi*, 66 S.Ct. 925, 928 n. 8 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). In the Eleventh Circuit, circumstances justifying court approval of an FLSA settlement in the litigation context include:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as

7

> FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The settlement of the instant action involves a situation in which the Court may approve the Parties' settlement to resolve and release the Plaintiff's FLSA claims against Defendant, as well as any other claims arising out of Plaintiff's employment with Defendant. The proposed settlement arises out of an action brought by the Plaintiff against Defendant.

The Parties previously agreed that the instant action involves disputed issues. The Parties previously agreed that settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues. Plaintiff and Defendant discussed whether Plaintiff was compensated for all hours worked. The Parties then engaged in detailed settlement discussions, based upon their independent analyses of the facts of the matter. The Parties voluntarily agreed to the terms of their settlement at the conclusion of the negotiations.

## V.     Conclusion

Defendant respectfully requests this Court approve the settlement between the Parties and dismiss the instant action with prejudice.

### Certificate of Conferral

Defendant's counsel certifies that they conferred on January 17, 2023 with Ms. Bell, who is pro se, in good faith by email and phone to discuss her agreement to his motion. Defendant also conferred with Plaintiff on January 18, 2023 to discuss this motion, and shared a copy of a draft of this motion. It is not clear to Defendant whether Plaintiff entirely agrees or disagrees with the relief sought. It does not appear that she wants to completely undo the agreement. Instead, it appears Plaintiff wants to keep the proposed $8,000.00 settlement but believes the Court is inviting her to advocate for a higher amount, with the $8,000.00 being the floor of what she can receive.

Dated:       January 18, 2023

/s/ NATHANIEL H. SARI
Nathaniel H. Sari, Esq.
FLBN: 125295
Boyd Richards Parker & Colonnelli, P.L.
100 S.E. Second St, Suite 2600
Miami, Florida 33131
(305) 728-8446 Direct Dial
(786) 425-1045 Telephone
(786) 425-3905 Facsimile
nsari@boydlawgroup.com
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this matter.

**/s/ Nathaniel H. Sari**
Nathaniel H. Sari, Esq.

**Exhibit "A"**

Case 6:22-cv-00102-WWB-RMN   Document 73   Filed 01/18/23   Page 10 of 10 PageID 370